UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re SHERRY LYNN SCHELINE, <br><br> Debtor, <br><br> _____ <br><br> McCall Weddings, LLC an Idaho limited liability company; STEVE BERRY; and SHANNON BERRY, <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SHERRY LYNN SCHELINE, <br><br> Defendant and Appellee. | Case No. 1:18-cv-00449-BLW <br><br> MEMORANDUM DECISION |

## INTRODUCTION

Before the Court is Appellants McCall Weddings and Steve and Shannon Berry's appeal from the bankruptcy court's September 18, 2018 default judgment. The judgment awarded the Berrys $3,000 on one of the seven claims contained in Appellants' adversary complaint. The bankruptcy court dismissed the remaining claims. For the reasons explained below, the Court will affirm.

MEMORANDUM DECISION AND ORDER - 1

## BACKGROUND

In August 2017, Sherry Scheline filed a bankruptcy petition. Shortly after, McCall Weddings and the Berrys filed an adversary complaint against her. Scheline did not respond, prompting the bankruptcy court to enter her default.

In May 2018, the bankruptcy court conducted an evidentiary hearing on McCall Weddings'[1] motion for a default judgment. At the hearing, both sides presented evidence on a wide range of issues, including the merits of McCall Weddings' claims. The adversary complaint contained seven claims; the one most relevant to this appeal is McCall Weddings' claim that Scheline defamed it by telling others that McCall Weddings had hacked her email account. (Scheline's allegedly defamatory communications are discussed in more detail below.)

After considering the evidence presented at the hearing, the bankruptcy court entered a $3,000 non-dischargeable judgment in the Berrys' favor on the seventh claim for relief. That claim was brought under § 523(a)(6) of the Bankruptcy Code; it asked the bankruptcy court for a "Determination that Debt Owed to Plaintiffs for Defendant's Slander Per Se is Excepted from Discharge Pursuant to 11 U.S.C. § 523(a)(6)." *Adversary Compl.*, at 20. The bankruptcy court dismissed the

---

[1] From time to time throughout this opinion, and for the sole purpose of making the opinion more readable, the Court will collectively refer to McCall Weddings, Steve Berry, and Shannon Berry as "McCall Weddings."

**MEMORANDUM DECISION AND ORDER - 2**

remaining claims. McCall Weddings now appeals.

On appeal, McCall Weddings argues that the bankruptcy court abused its discretion in ruling on the motion for a default judgment. Additionally, McCall Weddings says the bankruptcy court failed to apply governing federal law in deciding whether Scheline made defamatory statements.

## JURISDICTION

This Court has jurisdiction to entertain an appeal from the bankruptcy court under 28 U.S.C. § 158(a), which provides: "The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees" of bankruptcy judges.

## STANDARD OF REVIEW

The Court reviews the bankruptcy court's entry or denial of a default judgment under Rule 55(b) for an abuse of discretion. *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986). An abuse of discretion occurs when a court makes an error of law, rests its decision on clearly erroneous findings of fact, or when the reviewing court is left with a definite and firm conviction that the bankruptcy court committed a clear error of judgment. *United States v. Hinkson*, 585 F.3d 1247, 1260 (9th Cir. 2009).

As for McCall Weddings' contention that the bankruptcy court wrongly concluded that certain of Scheline's statements were statements of opinion, and

thus not defamatory, the Court reviews these conclusions of law de novo. *See Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009) ("Whether an allegedly defamatory statement is one of opinion or fact is a question of law.").

## ANALYSIS

McCall Weddings identifies three issues on appeal. The first two relate to the extent of a bankruptcy court's discretion in ruling on a motion for default judgment. The third relates to Scheline's alleged defamation of McCall Weddings. *See Opening Br.*, Dkt. 8, at 7.

**1.     The Default Judgment**

McCall Weddings contends that the bankruptcy court abused its discretion in two related ways when it ruled on its motion for a default judgment. First, McCall Weddings says the bankruptcy court "failed to deem the complaint's factual allegations admitted as a matter of law." *Id.* at 12. Second, McCall Weddings says the bankruptcy court "erroneously considered defendant's [Scheline's] testimony" in deciding whether to enter a default judgment. *Id.* at 21.

McCall Weddings misunderstands the breadth of a bankruptcy court's discretion when faced with a motion for default judgment. While it is generally true that "upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true," *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citations omitted), this is not always so.

Rather, a court entertaining a motion for default judgment may decide to conduct hearings and consider evidence offered at those hearings. *See* Fed. R. Civ. P. 55(b)(2).[2]

Federal Rule of Civil Procedure 55(b)(2) clarifies the point. It grants the court broad discretion in deciding whether to enter a default judgment and in deciding whether to conduct any hearings. It states that that "[t]he court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to:

>  (A)  conduct an accounting;
>  (B)  determine the amount of damages;
>  (C)  *establish the truth of any allegation by evidence*; or
>  (D)  *investigate any other matter*.

Fed. R. Civ. P. 55(b)(2) (emphasis added).

If the bankruptcy court were duty bound to accept all well-pleaded factual allegations as true – which is what McCall Weddings is arguing – then Rule 55 could not grant trial courts authority to conduct hearings to "establish the truth of

---

[2]Though not directly relevant here, obtaining a default judgment is a two-step process. First, the plaintiff asks the court to enter the non-responding defendant's default. Then, the plaintiff applies for a default *judgment*. The clerk is empowered to enter a default judgment only if the claim "is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). "In all other cases," the plaintiff must ask the court (not the clerk) to enter a default judgment. *See* Fed. R. Civ. P. 55(b)(2). Here, because it was not seeking a sum certain, McCall Weddings applied to the bankruptcy court – not the clerk – for a default judgment.

MEMORANDUM DECISION AND ORDER - 5

any allegation by evidence." R. 55(b)(2). In other words, this Court need not go beyond language of the rule to resolve the first two issues on appeal.

But Ninth Circuit authority reinforces the conclusion. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) held that deciding whether to enter a default judgment is committed to the sound discretion of the lower court. *Eitel* identified seven factors trial courts may consider in exercising that discretion:

(1) the possibility of prejudice to the plaintiff;

(2) the merits of plaintiff's substantive claim;

(3) the sufficiency of the complaint;

(4) the sum of money at stake in the action;

(5) the possibility of a dispute concerning material facts;

(6) whether the default was due to excusable neglect; and

(7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471-72 (citation omitted).

Again, these factors undermine McCall Weddings' argument that the bankruptcy court had no choice but to accept the truth of the complaint's factual allegations. After all, the *Eitel* factors allow the trial court to consider the merits of the complaint, the possibility of a disputed factual issue, and the strong policy of deciding cases on the merits. Why would trial courts be permitted to consider those

issues if they always had to accept the truth of the complaint's allegations?

*Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987) is also instructive. There, the district court conducted a hearing after plaintiff moved for a default judgment. It heard evidence on damages and also "required the plaintiffs to prove a *prima facie* case, . . . ." *Id.* at 918. On appeal, the Ninth Circuit did not restrict itself to reviewing the allegations in the complaint but instead "reviewed both the averments in the complaint and the evidence adduced at the hearing." *Id.* And, earlier in the decision, the court generally observed that "Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment." *Id.* at 917; *see also Pacheco v. Morales,* 953 F.2d 15, 16 (1st Cir. 1992) (despite admissions upon default, the court always has power to require additional proof of any fact alleged as the basis for liability).³ In other words, although the issue was not before it, the Ninth Circuit signaled that Rule 55(b)(2) means what it says: If the district court wishes to conduct a hearing to "establish the truth of any matter" or "investigate any other matter," it may do so.

---

³ The First and Seventh Circuits have held that although a district court always has the power to require additional proof before entering a default judgment, the district court must notify the plaintiff accordingly before the hearing. *See Black v. Lane,* 22 F.3d 1395, 1398 (7th Cir. 1994); *Ramos-Falcon v. Autoridad de Energia Electrica,* 301 F.3d 1, 3 (1st Cir. 2002). There is no such rule in this circuit, and, in any event, McCall Weddings does not raise this particular issue on appeal – *i.e.*, that it did not receive adequate notice of the type of hearing that would be conducted. Further, at the hearing, McCall Weddings offered several witnesses who testified regarding the complaint's factual allegations.

**MEMORANDUM DECISION AND ORDER** - 7

Finally, other Ninth Circuit cases have held that if a party does not establish the merits of its claim – even after entry of default – then a district court acts within its discretion in denying a motion for a default judgment. *See, e.g., Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir.1980) (affirming denial of default judgment based on "the lack of merit in" plaintiff's § 1983 claims); *Yew v. Dulles*, 236 F.2d 415 (9th Cir. 1956) ("We have examined the facts presented to the trial court in support of and in opposition to the motion, and we conclude that the trial court did not abuse its discretion in denying the motion."); *Legardy v. Ceballos*, 528 Fed. Appx. 712 (9th Cir. 2013) (unpublished decision) (district court did not abuse its discretion in denying Legardy's motion for default judgement because Legardy failed to establish the merits of his § 1983 claim).

Given all these authorities, the Court concludes that the bankruptcy court acted well within its discretion when it: (1) conducted a hearing regarding the merits of the adversary complaint; (2) considered evidence offered by both parties in deciding whether to grant the requested default judgment; and (3) granted in part and denied in part McCall Weddings' motion for a default judgment.

2. **Defamation**

The Court also finds no error in the bankruptcy court's conclusions of law related to Scheline's allegedly defamatory statements. McCall Weddings contends that Scheline defamed it in two emails.

**MEMORANDUM DECISION AND ORDER - 8**

### A. The "tonyhart" email and Scheline's response

The disputed email communications began on August 12, 2015, when somebody using the email address "tonyhart4life@gmail.com" sent a mass email to various people in the wedding industry. *See Trial Ex.* 1053. The email accused Scheline – who was also working in the wedding industry – of plagiarism and other misdeeds. It reads as follows:

> FYI,
>
> Sherry Scheline, the publisher of IDOWED magazine, recently plagiarized an article featured in Bridal Musings three years ago. She never once credited the original author(s), and when "complimented" regarding this blog, she simply replied, "thanks for posting! CHEERS!". She also credits herself as the author of this blog article in the HTML code.
>
> Attached is a pdf of the article highlighting the original authors work.
>
> As someone who calls themselves a publisher, I could think of no worse crime than plagiarism.
>
> This is NOT the first time. A plagiarized article from "The Knot", entitled "Gift Giving Rules", also appeared on Sherry's website on June 23, 2015. The Knot was referenced and given credit only AFTER Sherry was exposed. Only THEN, were the words "adapted from The Knot" added at the bottom of the blog AFTER the fact.
>
> Why would I point this out? It angers me and several others in the community to see what Sherry has done.
>
> Signed,
> Concerned in McCall

**MEMORANDUM DECISION AND ORDER - 9**

> P.S. As of last weekend, NEITHER Summer editions of IdoWed nor IdoWed McCall (formerly known as McWed), have been printed . . . . [O]nly some prototypes have been printed, not the bulk of the magazines. If you've paid for advertising, you may want to check this out for yourself.

*Trial Ex.* 1053.

When Scheline learned of the email, she quickly reached out via email to the recipients of the tonyhart email. Here are the relevant portions of her response:

> Greetings!
>
> First, let me start by apologizing. *It is clear that my email was hacked because some of your personal emails were used this morning in the email which you all received that accused me of plagiarism.* The claim is untrue and I would like to address all the issues in the email you received.
>
> Who is Tony Hart? Well, according to a google search there does not seem to be a Tony Hart in McCall. McCall Police were notified of this imaginary McCall Resident and the email that you received. We may never know who he or she is.
>
> The first issue in the email is the 'plagiarized article.' If the respondent would have clicked in the link in the title it would have taken him or her directly to Bridal Musings. . . . .[4]
>
> The second major issue was the printing and distribution of my magazine. . . . .
>
> During the past year, I have been involved in a trademark lawsuit involving myself (McWed) and McCall Weddings, LLC. McCall

---

[4] The remainder of this paragraph and the next are omitted. In these paragraphs, Scheline responded to accusations related to plagiarism and related to the printing and distribution of her magazine.

MEMORANDUM DECISION AND ORDER - 10

> Weddings tried twice to stop all publication of McWed and to pull all McWed issues that were previously printed. The judge did not grant that request either time. Finally, in early July this year, we reached a settlement in mediation. I was not required to pay McCall Weddings, LLC any damages and I agreed to change the name of my publication going forward so that I would not accumulate even higher legal bills. I agreed to this in part because I feel that the single IDoWED brand going forward will be stronger than separate brands in different markets. Before, during and after this lawsuit both McWED and I have been subjected to a constant stream of harassment from them as well as their marketing contractor, Julie Conrad. I take very seriously all criticism and I urge you to please contact me any time you have a concern or criticism. I also urge you to make your marketing decisions based on your own judgment and what works, not based on the grudge of another. *I have no direct evidence that McCall Weddings or Julie Conrad authored the email you received. However, the tone and content of the letter are very similar to Facebook posts made by Ms. Conrad. I will be trying to get to the bottom of this.* (Both Valley County Sheriff and McCall Police Department have been notified). My focus, however is on making my business and magazine better, not on being consumed by the actions of others whom I cannot control.
>
> I am proud of my magazine. I run into brides I'd never had personal contact with and they are so excited. "I love your magazine! I use tit to find my vendors." That makes my day.
>
> *An anonymous, probably hack sourced email*, while a major inconvenience to me, doesn't change the fact that brides (and their moms and even grooms) love getting ides from IDoWED and its associated social media.  . . . .
>
> . . .
>
> Sherry Scheline

*See* Trial Ex. 1053 (emphasis added; post-script omitted).

**MEMORANDUM DECISION AND ORDER - 11**

### B. The Montague email and Scheline's response

On August 19, 2015 – after Scheline had responded to the "tonyhart" email, Jared Montague of Brundage Mountain (apparently one of Scheline's clients) forwarded a copy of the tonyhart email to Scheline, asking,

> "Can you explain? . . . I'm not one to jump to conclusions or to simply believe the first thing I read. However, this is not the first I've heard of this. . . . Are the accusations below [in the tonyhart email] true?"

Trial Ex. 1053.

In response, Scheline cut and pasted the mass response she had sent out earlier and forwarded that to Mr. Montague, along with a prefatory note. The first few sentences of her response are as follows:

> Hi Jared,
>
> *This unfortunately is most likely the work of McCall Weddings.* This sad and ridiculous situation has gone on for a year. The article was actually blogged with permission. . . . It is so unfortunate that others have gotten wrapped up in this situation. I will continue to take the high road through and continue to grow my company. Focusing on what I can control and not on what others do to me. Your email was clearly one that I missed in my response. *The following [i.e., the mass response Scheline had sent earlier] was the email drafted with my attorney sent to everyone who received the email.*

*Id.* (emphasis added).

### C. Analysis

On appeal, McCall Weddings focuses primarily on this statement in Scheline's email to Jared Montague: "This is unfortunately most likely the work of

MEMORANDUM DECISION AND ORDER - 12

McCall Weddings." *Id.* McCall Weddings says that, in context, when Scheline said that, she was "specifically accus[ing] McCall Weddings of hacking her email." *Opening Br.*, Dkt. 8, at 26.

The bankruptcy court was not persuaded. It concluded that Scheline's "communications expressed . . . her opinion that she suspected Plaintiffs were 'most likely' involved in hacking her email account, but did not assert their involvement as a matter of fact." *Sept. 28, 2018 Mem. Decision*, Dkt. 4-22, at 33. The bankruptcy court went on to explain that Scheline's "statements of opinion are protected by the First Amendment and are not actionable as defamation." *Id.* at 34 In reaching this conclusion, the bankruptcy court cited an Idaho case: *Wiemer v. Rankin*, 790 P.3d 347, 352 (1990). *Id.*

McCall Weddings says the bankruptcy court should have instead applied Ninth Circuit case authority – specifically, *Unelko Corp. v. Rooney*, 912 F.2d 1049 (9th Cir. 1990). *See Opening Br.*, Dkt. 12, 28-33.[5] Critically, however, McCall Weddings does not meaningfully explain how Idaho and Ninth Circuit case authority differ on any salient point. Granted,"[m]odern defamation law is a

---

[5] Appellants argue that the bankruptcy court abused its discretion by failing to apply the "appropriate legal analysis." *Opening Br.*, Dkt. 8, at 33.  As noted above, however, the Court reviews this issue de novo. *See generally Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009) ("Whether an allegedly defamatory statement is one of opinion or fact is a question of law.").

**MEMORANDUM DECISION AND ORDER - 13**

complex mixture of common-law rules and constitutional doctrines." *Pan Am Sys., Inc. v. Atl. Ne. Rails & Ports, Inc.*, 804 F.3d 59, 64 (1st Cir. 2015). So in any given defamation case, there are multiple sources of potentially applicable law. *See generally Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995) ("the First Amendment safeguards for freedom of speech and press limit state law"); *see also Pan Am*, 804 F.3d at 64; *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1181 (10th Cir. 2007).

But in this case, the result is the same under either Idaho or Ninth Circuit case authority. Both jurisdictions have wrestled with how to decide if an allegedly defamatory statement is one of fact or opinion. *See, e.g., Unelko*, 912 F.2d at 1052-53; *Weimer v. Rankin*, 790 P.2d 347, 352-53 (Idaho 1990). And both jurisdictions look to the totality of circumstances in which the disputed statement was made. *See Underwager*, 69 F.3d at 366; *Weimer*, 790 P.2d at 353. The initial legal question for the court, under either analysis, is whether a reasonable factfinder could conclude that a contested statement implies an assertion of objective fact. *See Partington v. Bugliosi*, 56 F.3d 1147, 1152 (9th Cir. 1995).

The Ninth Circuit, for its part, has developed a three-part test to guide that analysis. *Partington*, 56 F.3d at 1152 (*citing Unelko*, 912 F.2d at 1053). The test asks:

(1) whether the general tenor of the entire work negates the

**MEMORANDUM DECISION AND ORDER - 14**

>    impression that the defendant was asserting an objective fact;
>
> (2)    whether the defendant used figurative or hyperbolic language that negates that impression; and
>
> (3)    whether the statement is question is susceptible of being proved true or false.

*Id.* (*citing Unelko*, 912 F. 2d at 1053).

In applying this test, the Ninth Circuit has more generally recognized that "when an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment." *Id.* at 1156-67.

Here, Scheline laid out her reasoning for the reader. She plainly stated that she did not know who authored the tonyhart email accusing her of plagiarism and that she had "no direct evidence" that McCall Weddings had authored that email. She then laid out the facts she was relying upon to conclude that, in her opinion, McCall Weddings was the likely culprit. She pointed to the "tone and content" of Julie Conrad's facebook posts, and she also pointed out, more generally, that she had been involved in a lengthy, contentious lawsuit with McCall Weddings.

Thus, the readers of the emails were informed that: (1) Scheline did not know who authored the emails; (2) Scheline believed her email had been hacked, but she did not know who did it; and (3) Scheline believed McCall Weddings was

**MEMORANDUM DECISION AND ORDER - 15**

the culprit, but she had no direct evidence that this was so. Under those circumstances, a reasonable fact-finder could not conclude that Scheline was implying – as a matter of objective fact – that McCall Weddings had hacked her email account.

The result does not change if the facts are run through the three-part test laid out in *Unelko*:

First, the general tenor of the email thread negates the impression that Scheline was asserting objective facts. As just noted, she said she did not know for sure who authored the emails.

The second question is whether Scheline used figurative or hyperbolic language. She did not, at least in connection with her statements that her email account had been hacked.

The third question is whether the alleged statement is susceptible of being proved true or false. Whether McCall Weddings hacked Scheline's account is susceptible of being proved true or false.

Ultimately, then, two of the three questions are answered in McCall Weddings' favor. But no single factor is dispositive and the big picture is that, as already discussed, when Scheline's statements are read in context, no reasonable factfinder could conclude that she had "implied an assertion of objective fact" – *i.e.,* that McCall Weddings had hacked her email account. *Unelko*, 912 F.2d at

**MEMORANDUM DECISION AND ORDER - 16**

1053. Thus, even if the bankruptcy court had analyzed the issue under Ninth Circuit case law, rather than Idaho case law, the result would be the same. The Court will therefore affirm.

## CONCLUSION

For all these reasons, the bankruptcy court's judgment is **AFFIRMED.**

DATED: May 13, 2019

B. Lynn Winmill
U.S. District Court Judge